# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the<br>Personal Restraint Petition of:<br><br><br>MICHAEL JOSEPH BRADY,<br><br><br>Petitioner. | No.59994-5-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. – In his third personal restraint petition (PRP), Michael Brady challenges several community custody conditions imposed by the Department of Corrections (DOC) following his release from prison after being convicted of multiple counts of first degree child rape and first degree child molestation. Multiple appeals and PRPs have resulted in the trial court vacating several convictions and striking various community custody conditions from his sentence. DOC also modified or eliminated some of Brady's community custody conditions after he filed this PRP. And the Chief Judge of this court narrowed the scope of Brady's PRP in light of DOC's modifications.

We hold that RCW 9.94A.704(7)(b) governs Brady's PRP, and only requires DOC to show that DOC-imposed community custody conditions are reasonably related to "at least one of the following: [t]he crime of conviction, the offender's risk of reoffending, or the safety of the community." We further hold that the community custody condition requiring polygraph

examinations must be amended as stated in this opinion. We reject the remainder of Brady's arguments.

Accordingly, we grant Brady's petition in part and deny the petition in part.

FACTS

In October 2002, a trial court found after a bench trial that Brady was guilty of 17 counts of first degree child rape, seven counts of first degree child molestation, and six counts of sexual exploitation of a minor with sexual motivation. Brady's victims were his two stepdaughters. Brady took 150 explicit photographs of his crimes with the victims.

The trial court sentenced Brady to an exceptional sentence of 636 months in confinement and community custody. The court required compliance with community custody conditions as part of Appendix H of the judgment and sentence. This court affirmed his convictions and sentence in 2004. *State v. Brady*, noted at 121 Wn. App. 1032 (2004).

In 2005, this court in an unpublished order granted Brady's first PRP, holding that the judge-found facts supporting the exceptional sentence were unconstitutional. The court vacated Brady's sentence and remanded for resentencing.

The trial court subsequently resentenced Brady to 318 months in confinement and community custody. The community custody conditions required Brady to not consume controlled substances and pay supervision fees. The Appendix H conditions from Brady's initial sentence were not incorporated into his amended sentence after resentencing.

In 2010, the Supreme Court in an unpublished order granted Brady's second PRP. The Supreme Court remanded to the trial court to vacate Brady's six convictions for exploitation of a minor. The trial court vacated the convictions as well as the special findings of sexual motivation. The vacation of these offenses did not affect Brady's sentence.

In 2016, Brady filed a CrR 7.8(b) motion for clarification of sentence and/or modification of community custody conditions. *State v. Brady*, No. 49183-4-II, slip op. at 4 (Wash. Ct. App. Mar. 27, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049183-4-II%20Unpublished%20Opinion.pdf. Brady challenged DOC's use of the conditions of Appendix H from his initial 2002 sentence in his amended sentence and community custody conditions. *Id.* The trial court denied Brady's motion. *Id.* at 5. This court reversed and remanded to the trial court to order that Appendix H no longer was a part of Brady's amended sentence. *Id.* at 8-9.

In 2021, the trial court struck the conditions that required Brady to pay community custody supervision fees and costs because he was indigent.

Brady apparently was released from prison in June 2024 to start a term of community custody. DOC imposed several community custody conditions in addition to court-ordered conditions.

Brady filed this timely PRP challenging DOC's community custody conditions. In response, DOC removed or modified several conditions. Specifically, DOC removed (1) two conditions from the 2002 judgment and sentence that were not imposed in the 2006 judgment and sentence, (2) the conditions prohibiting use and possession of alcohol, (3) the geographic boundaries condition, (4) the condition prohibiting cannabis use and possession, (5) the condition requiring breathalyzer and urinalysis testing, and (6) the condition allowing home visits. The Chief Judge of this court held that Brady no longer was under personal restraint from these conditions and dismissed Brady's challenge to these conditions as moot under RAP 16.11(b). The Chief Judge referred Brady's challenges to the remaining conditions to a panel for determination on the merits.

The challenged conditions that remain for purposes of this PRP require Brady to (1) inform DOC of any dating relationship, (2) not enter into areas that cater to children under age 18, (3) not have contact with minors, (4) utilize DOC-approved monitoring software for internet access, (5) not possess sexually explicit materials, and (6) submit to polygraph examinations. The conditions requiring polygraph examinations and internet monitoring software do not state whether Brady must pay fees relating to these conditions.

In a statement of additional authorities, Brady provides a letter in which DOC required him to appear for a polygraph examination and pay a $35 fee.

ANALYSIS

A.      PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Conclusory allegations are insufficient. *Wolf*, 196 Wn. App. at 503. In addition, the factual allegations must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 18.

B.      LEGAL PRINCIPLES

        1.      Standard of Review

We review the imposition of court-ordered community custody conditions for an abuse of discretion.  *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).  An unconstitutional condition is an abuse of discretion.  *Id.*  And unlike for statutes, we do not presume that community custody conditions are valid.  *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

No case has expressly discussed the standard of review for DOC-imposed community custody conditions under RCW 9.94A.704(7)(b) as opposed to court-ordered conditions.  Under former statutes, this court reviewed "supervision conditions" imposed by DOC for an abuse of discretion.  *See In re Pers. Restraint of Golden*, 172 Wn. App. 426, 430, 290 P.3d 168 (2012) (utilizing an abuse of discretion standard for conditions imposed under former RCW 9.94A.715(2)(b) (2006)).  We adopt the same abuse of discretion standard we utilize in analyzing court-imposed community custody conditions.

        2.      Vagueness

Community custody conditions that are vague are unconstitutional under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution.  *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678-79, 425 P.3d 857 (2018).  Community custody conditions are unconstitutional if they (1) do not define the condition " 'with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . [do] not provide ascertainable standards . . . to protect against arbitrary enforcement.' " *Id.* at 678 (internal quotation marks omitted) (alterations in original) (quoting *State v. Bahl,* 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008)).

5

" '[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.' " *Padilla*, 190 Wn.2d at 677 (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)). Rather, the question is whether fair minded citizens have fair warning of the proscribed conduct. *State v. Wallmuller*, 194 Wn.2d 234, 239, 449 P.3d 619 (2019). And they do if " 'ordinary people can understand what is and is not allowed, and are protected against arbitrary enforcement.' " *Id.* (quoting *Sanchez Valencia*, 169 Wn.2d at 791).

When deciding a vagueness challenge, we consider the terms in the context in which they are used. *In re Pers. Restraint of Ansell*, 1 Wn.3d 882, 898, 533 P.3d 875 (2023). "Community custody conditions should be 'read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to [the community corrections officer (CCO)].' " *Id.* (alteration added) (quoting *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021)).

3.    Review of Conditions Under RCW 9.94A.704(7)(b)

Brady argues in his opening brief that former RCW 9.94A.713(5) (2001) governs the standard for the addition or modification of community custody conditions. Former RCW 9.94A.713(5), which outlined the requirements for modification or addition of community custody conditions, stated,

> By the close of the next business day, after receiving notice of a condition imposed by the [Indeterminate Sentence Review Board] or [DOC], an offender may request an administrative hearing under rules adopted by the board. The condition shall remain in effect unless the hearing examiner finds that it is not reasonably related to *any* of the following:
>     (a) The crime of conviction;
>     (b) The offender's risk of reoffending; or
>     (c) The safety of the community.

(Emphasis added.)

But this statute did not go into effect until September 1, 2001, and did not apply to offenses committed before the effective date. LAWS OF 2001, ch. 12, § 503. Brady concedes in his reply brief that former RCW 9.94A.713(5) does not apply to him because his crimes occurred in May through July of 2001.[1]

Instead, RCW 9.94A.704(7) governs the community custody conditions DOC imposed on Brady. RCW 9.94A.704(7)(b), which was enacted in 2024, states,

> Within 10 business days of receiving notice of a condition imposed or modified by [DOC], an offender may request an administrative review under rules adopted by [DOC]. The condition shall remain in effect if the reviewing officer finds that it is reasonably related *to at least one of the following*: The crime of conviction, the offender's risk of reoffending, or the safety of the community.

(Emphasis added.) RCW 9.94A.704(7)(b) applies to "all offenders sentenced to a term of community custody before, on, or after the effective date" of March 15, 2024. LAWS OF 2024, ch. 118, §§ 9, 11. We conclude that RCW 9.94A.704(7)(b) only requires that one of these three criteria be met for a DOC-imposed community custody condition to be lawful.

Nevertheless, Brady argues that the reasoning of *Ansell*, 1 Wn.3d 882, applies to RCW 9.94A.704(7)(b) such that a modification to a community custody condition must meet all three of the listed criteria. In *Ansell*, the Supreme Court held that former RCW 9.94A.713(5), which is quoted above, required that a community custody condition must meet all three of the statutory

---

[1]Brady suggests in his reply brief that former RCW 9.94A.120(11) (2000) should govern any modification or addition of community custody conditions. Former RCW 9.94A.120(11) does not discuss the criteria for modifying or adding community custody conditions. It states that people convicted for domestic violence related sex crimes can be subject to community custody conditions. We reject this conclusory argument.

requirements of being related to the crime, the offender's risk of reoffending, and the safety of the community. 1 Wn.3d at 885-86.

But subsequent to *Ansell*, the legislature enacted RCW 9.94A.704(7)(b), which states that a community custody condition only needs to be reasonably related to "at least one" of those requirements. So the legislature responded to *Ansell* by clarifying its intent that only one of the statutory requirements is necessary for DOC to add or modify a condition of community custody.

4.    Crime of Conviction

Several of Brady's challenges relate to the provision in RCW 9.94A.704(7)(b) that DOC can impose conditions that are "reasonably related to . . . the crime of conviction." RCW 9.94A.703(3)(f) authorizes trial courts to impose "crime-related" prohibitions. For a court-ordered condition to be "crime-related," there must be a basis for connecting the condition to the crime. *State v. Geyer*, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021). "The condition need not exactly mirror the means and methods of the charged crime to be crime related." *State v. Gonzales*, 1 Wn. App. 2d 809, 821, 408 P.3d 376 (2017). Determining whether court-ordered community custody conditions are crime-related is discretionary, and no abuse of discretion occurs if there is a reasonable relationship between the crime of conviction and the condition. *Hai Minh Nguyen*, 191 Wn.2d at 683-84.

We interpret "reasonably related to . . . the crime of conviction" in RCW 9.94A.704(7)(b) the same as "crime-related" in RCW 9.94A.703(3)(f) and apply the same rules.

C.    APPENDIX H CONDITIONS

Brady argues that the condition prohibiting Brady from using controlled substances was from Appendix H of his 2002 judgment and sentence that was later struck. DOC removed this condition, and the Chief Judge of this court dismissed this issue as moot. Brady does not allege

any other community custody conditions are from Appendix H of his 2002 judgment and sentence.

Accordingly, we decline to address this argument.

D.    DATING RELATIONSHIPS

Brady challenges DOC's dating relationships community custody condition, which states,

> You shall inform the supervising CCO [community corrections officer] and sexual deviancy treatment provider of any dating relationship.  A disclosure of your sex offender status and treatment requirements is required prior to any sexual contact.

Resp.'s Ex. 1, Attach. H at 3.[2]  Brady argues that this condition is not crime related because his crimes were specific to minors and the condition is not limited to adults responsible for the care or custody of minors.[3]  We disagree.

The court rejected a similar argument in *State v. Gantt*:

> The requirement for treatment provider approval [of dating relationships] is "common for sexual offenders" as "the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors."

29 Wn. App. 2d 427, 457, 540 P.3d 845, *review denied*, 3 Wn.3d 1002 (2024) (quoting *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 61, 469 P.3d 322 (2020)); *see also State v. Martinez Platero*, 17 Wn. App. 2d 716, 726, 487 P.3d 910 (2021); *State v. Lee*, 12 Wn. App. 2d 378, 403, 460 P.3d 701 (2020).

---

[2] Brady's PRP frames this condition as "Condition 5" from the Appendix H conditions.  But the Appendix H conditions were specifically struck by Brady's prior PRP, and DOC imposed these conditions.  We address this condition as a DOC-imposed community custody condition, not a court-imposed Appendix H condition.

[3] Brady also characterizes the condition as too broad.  We decline to address this condition as a constitutional overbreadth challenge because Brady does not raise a constitutional issue with the condition.

Brady committed his crimes against his stepchildren, who he had access to through their mother. Therefore, this condition has a connection with Brady's crimes of conviction. He also took numerous explicit photos of his crimes. Because adults with whom Brady has dating relationships may serve as caregivers to minors or have other close non-parental relationships with minors, the condition also reasonably relates to the safety of the community.

We hold that DOC did not abuse its discretion in imposing the dating relationships community custody condition.

E.      AREAS THAT CATER TO MINORS

Brady challenges DOC's community custody condition that prohibits him from entering areas that cater to minors. This condition, as amended by DOC, states,

> You shall not enter into or frequent business establishments or areas that cater to persons under age 18 without being accompanied by a responsible adult. Such establishments may include but are not limited to video game parlors, parks, pools, skating rinks, daycares, fast food restaurants, school grounds, malls or any areas routinely used by persons under age 18 as areas of play/recreation.

Resp.'s Ex. 1, Attach. H at 4. DOC's original condition prohibited Brady from areas that cater to "minors" rather than persons under age 18. Brady argues that this condition is unconstitutionally vague and not crime related. We disagree.

First, Brady claims that this condition is vague. But persons under age 18 is a discrete group of people for which fair minded citizens would have a fair warning of the proscribed conduct. *See Wallmuller*, 194 Wn.2d at 239. Accordingly, we conclude that the condition as amended by DOC is not unconstitutionally vague.

Second, Brady claims that the condition is not crime related because he committed his crimes in the family home, not in the locations specified in the condition. But Brady committed his crimes against children. The condition prohibits him from being in areas regularly visited by

children without supervision. The condition prevents Brady from being unsupervised in areas with the same class of people as his victims. Therefore, we conclude that the condition is reasonably related to the crimes of conviction.[4]

We hold that DOC did not abuse its discretion in imposing the community custody condition prohibiting Brady from frequenting places that cater to persons under the age of 18.

F.     NO CONTACT WITH MINORS

Brady challenges DOC's community custody condition that states, "You shall have no contact with minors." Resp.'s Ex. 1, Attach. G at 2. Brady argues that DOC did not have authority to impose this condition and that the condition is unconstitutionally vague. We disagree.

First, Brady claims that DOC abused its discretion by not limiting this condition to persons under 16 because he was convicted only of child rape and child molestation, and those crimes only involved children under 16. But "[t]he condition need not exactly mirror the means and methods of the charged crime to be crime related." *Gonzales*, 1 Wn. App. 2d at 821. Brady's crimes were violent and exploitative toward children. The condition prevents him from contacting the same general class of persons as his victims. We conclude that DOC had authority to impose this condition.

Second, Brady claims that this condition is unconstitutionally vague. He argues that the condition improperly prohibits him from having even incidental contact with a minor. But this is not a vagueness argument. It is an overbreadth argument about the scope of prohibited conduct.

---

[4] Brady also argues that this condition should be changed to persons under 16 years of age. This argument is part of his vagueness argument, so we reject it. In his reply brief, Brady appears to argue that this condition nonetheless should be changed to persons under age 16. Because we hold that DOC did not abuse its discretion, we decline to address this argument.

The condition is clear enough to give Brady fair warning of the proscribed conduct, and therefore is not unconstitutionally vague.

We hold that DOC did not abuse its discretion in imposing the condition prohibiting contact with minors.

G.      INTERNET ACCESS

Brady challenges DOC's community custody condition that originally stated,

> You shall not possess electronic devices unless approved by your CCO and is monitored by software with your CCO as the accountability partner. All electronic devices must be disclosed on the social media and electronic device form. All devices you are in possession of are subject to search.

Resp.'s Ex. 1, Attach. G at 2. After Brady filed his PRP, DOC amended the condition. The condition now states, "Do not access the internet on electronic devices except while using DOC-approved monitoring software. Your CCO must be your designated accountability partner." Resp.'s Ex. 1, Attach. H at 4. Brady argues that this condition is not crime related and is unconstitutionally overbroad. We disagree.

First, Brady claims that the condition is not crime related because his crimes did not involve the use of the internet. But DOC-imposed conditions do not need to be crime related. DOC also can impose conditions that are reasonably related to the safety of the community. RCW 9.94A.704(7)(b). Here, Brady could use the internet to contact potential victims. The community's safety is protected by limiting the ability to "use the Internet to solicit children." *Johnson*, 197 Wn.2d at 745.

In addition, DOC may enforce conditions that monitor an offender's compliance with community custody conditions. *State v. McClinton*, 186 Wn. App. 826, 835, 347 P.3d 889 (2015). Here, Brady is subject to multiple conditions prohibiting him from contacting minors

and possessing sexually explicit material. The internet is a popular means of doing so, and therefore DOC can place reasonable monitoring conditions as a means of enforcement.

Second, Brady claims that this condition is overbroad. Under the First Amendment, restrictions on access to the internet must be "narrowly tailored to the dangers posed by the specific defendant." *Johnson*, 197 Wn.2d at 745. Brady contends that because the monitoring software does not account for the various levels of sex offenders, this monitoring amounts to a constitutional violation. But Brady cites no authority for this proposition. And Brady's crimes involved taking 150 photographs of his victims, all of which could be exploited on the internet. We reject Brady's constitutional argument.

We hold that DOC did not abuse its discretion in imposing a community custody condition limiting Brady's access to the internet without DOC-approved monitoring software.[5]

H.    POSSESSION OF SEXUALLY EXPLICIT MATERIAL

Brady challenges DOC's community custody condition that states,

> You shall not possess or peruse pornographic/sexually explicit materials. Pornographic/sexually explicit materials consists or [sic] any written, visual, or audio material that is reasonably intended, produced, or used for the purpose of sexual gratification which displays, portrays, depicts, or describes: a) nudity, which includes, but is not limited to, exposed/visible (in whole or part, including under or through translucent/thin [sic] materials providing intimate physical detail) genitals/genitalia, anus, buttocks, and/or female/transgender breast nipple(s); b) a sex act which includes, but is not limited to genital-genital, oral-genital, anal genital, oral-anal contact/penetration, genital or anal contact/penetration with an inanimate object, masturbation and/or bodily excretory behavior; c)

---

[5] In his reply brief, Brady alleges that he was arrested for unauthorized possession of electronic device as a violation of the amended community custody condition after DOC amended the condition to remove the prohibition on possessing electronic devices. Brady also states that his CCO confirmed that Brady may not possess "any internet capable device" with respect to the new condition. Although we will not address this allegation because it is outside the record, we acknowledge that the language of the amended condition is not ambiguous. The condition states that Brady may not "access the internet on electronic devices except while using DOC-approved monitoring software." Resp.'s Ex. 1, Attach. H at 4. The condition does not prohibit Brady from possessing electronic devices generally.

sadistic/masochistic abuse, bondage, bestiality, and/or participant who appears to be nonconsenting, dominated, degraded, humiliated, or in a submissive role, and/or a participant who appears to be acting in a forceful, threatening, dominating, or violent manner; and/or d) a minor, or a model or cartoon depicting a minor, in a sexually suggestive setting/pose/attire.

Resp.'s Ex. 1, Attach. H at 4-5. Brady argues that this condition is not crime related and is unconstitutionally vague. We disagree.

First, Brady claims that this condition is not crime related. In *Hai Minh Nguyen*, the Supreme Court held that a person who commits sex crimes "establishe[s] his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." 191 Wn.2d at 686. The court held that a community custody condition prohibiting possession of sexual materials was crime related under RCW 9.94A.703(3)(f).

Here, Brady was convicted of sex crimes. And we use the same definition of crime related in RCW 9.94A.703 for DOC-imposed conditions under RCW 9.94A.704(7)(b). Therefore, the reasoning of *Hai Minh Nguyen* controls. We conclude that the condition is reasonably related to Brady's crimes of conviction.

Second, Brady argues that the condition is unconstitutionally vague under *Bahl*, 164 Wn.2d at 758. In *Bahl*, the Supreme Court held that a "restriction on accessing or possessing pornographic materials" was unconstitutionally vague. *Id.* However, in *Ansell*, the Supreme Court held that the same community custody condition Brady currently is subject to is not unconstitutionally vague. 1 Wn.3d at 894. Therefore, Brady's vagueness challenge fails.

We hold that DOC did not abuse its discretion in imposing the community custody condition prohibiting Brady form possessing or perusing sexually explicit materials.

I.       POLYGRAPH EXAMINATIONS

Brady challenges DOC's community custody condition that states, "You shall submit to a polygraph examination as directed." Resp.'s Ex. 1, Attach. H. at 5. Brady argues that this condition violates the Fifth Amendment unless the condition is limited to monitoring compliance with court ordered conditions. We agree that this condition should be modified.

Washington courts consistently have found polygraph testing constitutional as a tool to monitor compliance with treatment of special community custody conditions. *E.g.*, *State v. Olsen*, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017). But DOC's condition does not specify that polygraph examinations are specifically for monitoring compliance with court ordered conditions. Rather, it subjects Brady to polygraph examinations at any time and for any purpose.

DOC disagrees that modification of this condition is needed because broad polygraph conditions impliedly are limited to monitoring and DOC has a policy that limits polygraph examinations to monitoring compliance with treatment and/or identified restrictions. However, we conclude that this condition should contain an express provision that polygraph examinations can be used only to monitor compliance with other conditions.

Accordingly, we hold that DOC must amend the community custody condition requiring polygraph examinations to state, "You shall submit to a polygraph examination as directed in order to monitor compliance with community custody conditions."

J.       INTERNET MONITORING AND POLYGRAPH FEES

Brady argues that he cannot be required to pay fees for internet monitoring software or polygraph testing. We disagree.

RAP 16.4(b) requires that a petitioner be under a "restraint," defined as "limited freedom because of a court decision in a civil or criminal proceeding" or "some other disability resulting

from a judgment or sentence in a criminal case." Brady does not show that he has been required to pay internet monitoring software fees. Therefore, he cannot demonstrate that he currently is under restraint from this condition and this issue is not ripe for adjudication.

In his statement of additional authorities, Brady shows that he was scheduled for a polygraph examination in April 2025 and required to bring $35 to pay for the examination. Brady also alleges that he was "told by his [CCO] that if he did not bring the $35.00, he was going to jail." Pet'r.'s Statement of Add'l Auth. (July 18, 2025) at 2. Because Brady demonstrates that he was subjected to a polygraph examination fee, we hold that this issue is ripe for judicial review.

RCW 9.94A.704(9) states, "[DOC] may require offenders to pay for special services rendered including electronic monitoring, day reporting, and telephone reporting, dependent on the offender's ability to pay. [DOC] may pay for these services for offenders who are not able to pay." Although RCW 9.94A.704(9) does not expressly reference polygraph examinations, we conclude that such examinations are "special services" under RCW 9.94A.704(9)

RCW 9.94A.704(9) gives DOC authority to require offenders to pay for special services, dependent on the offender's ability to pay. There is no indication in the record that Brady is unable to pay the $35 fee. Therefore, on this record DOC was within its discretion to require polygraph examination fees as part of a community custody condition it imposed.

Brady cites to several unpublished cases holding that polygraph fees are community custody supervision fees that are now prohibited when the defendant is indigent. But this case is distinguishable from those cases because they involved court-ordered conditions, not a DOC-imposed condition. Those cases did not address DOC's authority to require payment for special services under RCW 9.94A.704(9).

16

We hold that DOC did not abuse its discretion in requiring a polygraph examination fee.

CONCLUSION

We grant Brady's petition in part and deny the petition in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

VELJACIC, A.C.J.

CHE, J.